# THE STATE v. HENRY BOYER, Appellant.

### Division Two, February 7, 1911.

1. **EVIDENCE: No Objection.** The court will not hold it was error to admit evidence to which no objection was made at the time it was offered.

2. **————: Competent: Other Related Acts.** Testimony offered by the State that defendant, an hour or two prior to the time he shot deceased at the door of the dance hall, was waving a pistol over the head of another guest in the hall, is competent, whether the homicide was the result of defendant's attempt to shoot another guest, as the State contends, or was accidental and resulted from an attempt by bystanders to deprive defendant of his pistol and it was discharged accidentally in the scuffle, as defendant contends. [Distinguishing State v. Brown, 188 Mo. 451.]

3. **————: Defendant as Witness.** The usual instruction concerning defendant as a witness and his interest in the result as affecting his credibility, is again held not to be reversible error, but its fairness is not commended.

4. **SUFFICIENT EVIDENCE: Murder: Shooting at One, Killing Another.** R. was standing outside the door talking loud, and daring N. to come out that he might be whipped. Defendant came through the door with a pistol in hand, stepped up to R., said, "Will you behave?" and snapped the pistol at him twice, R. ran, defendant fired at him a third time, the cartridge exploded and the bullet struck the deceased, T., who was standing in the line of R.'s flight. When T. fell, defendant exclaimed, "I have killed the wrong man." *Held*, the evidence was sufficient to support a verdict of murder in the first degree.

5. **————: ————: ————: Friends.** Nor do the facts that defendant and R. were good friends, were on friendly terms at the time and had never had any trouble, reduce the homicide below murder in the first degree. Those facts can have no force in the light of the other facts.

6. **JURY: Murder: Voir Dire: Explanation of Punishment.** An explanation by the court to the veniremen, upon their voir dire examination in a murder case, that the jury had the right to determine whether defendant, if convicted, should receive the death penalty or life imprisonment, and that, as the death penalty might be considered the proper punishment, jurors

should qualify as to whether or not they had conscientious scruples against capital punishment, was not prejudicial error, nor did it tend in any degree to defendant's prejudice.

Appeal from Washington Circuit Court.—*Hon. Jos. J. Williams,* Judge.

AFFIRMED.

*M. E. Rhodes* for appellant.

(1)   The State has failed to prove a willful, felonious, deliberate, premeditated, malicious attempt to kill either Wilfred Roussan, Boss Courtois or any other person, because the testimony of Roussan was that he and the defendant were friends, were on friendly terms at the time, and had never had any trouble. The well-recognized principle of criminal law that in the absence of criminal intent crime is not committed, is too elementary to justify the submission of authorities. Reading all the testimony for the State from beginning to end, one fails to see wherein appellant was actuated at any time during this eventful night by criminal design. For the State to convict appellant of murder in the first degree, it must be shown that he tried to kill Wilfred Roussan, because that was the hypothesis on which the State based its charge of murder against this appellant. (2)   "Where illegal evidence has been admitted, it should be withdrawn by positive direction to the jury. It will not be sufficient to exclude it by inference only." 11 Ency. Pl. & Prac. 309. "It is difficult to tell what effect evidence admitted may have upon the triers of fact, but the impression made by what the court declared to be competent testimony can hardly be removed by anything short of a flat direction that it must be disregarded." Hinkle v. McClure, 32 Ohio St. 202. In the case at bar, the trial court should have withdrawn the testimony by a flat

direction, which it failed to do.   Every reason that
justified the court in attempting to withdraw this il-
legal evidence was defeated in the last clause in in-
struction 2.   The proper way to withdraw illegal evi-
dence from the jury is by instruction.   State v. Wil-
lard, 109 Mo. 242; State v. Silva, 130 Mo. 440; State
v. Dower, 134 Mo. 352; State v. Minor, 193 Mo. 597;
State v. Spivey, 191 Mo. 87.   "An instruction to disre-
gard evidence improperly admitted will not cure the
error admitting it, if prejudicial to the defendant."
State v. Mix, 15 Mo. 153; State v. Marshall, 36 Mo.
400; State v. Fredericks, 85 Mo. 145; State v. Kuehner,
93 Mo. 193; State v. Thomas, 99 Mo. 235; State v.
Brown, 188 Mo. 451.

*Elliott W. Major,* Attorney-General, and *James T.
Blair,* Assistant Attorney-General, for the State.

(1)   In the motion for new trial complaint is
made that the court lectured the veniremen a little
more than the ends of justice seemed to require.   The
answer is that no exceptions to the trial judge's re-
marks were taken below.   It is only on the back of an
exception that an objection can travel to this court.
(2)   There was no error in permitting counsel for the
State, other than the prosecuting attorney, to make
the opening statement.   State v. Taylor, 98 Mo. 243;
State v. Coleman, 199 Mo. 120.   (3)   The motion for
new trial contains the usual allegations of error in
the admission and exclusion of evidence.   Very few
exceptions were saved.   (a)   Certain objections were
supported by no reason given at the time.   State v.
West, 95 Mo. 149; State v. Wright, 134 Mo. 418; State
v. Harris, 199 Mo. 723.   (b)   This court will not or-
dinarily review the exercise of the discretion of the
trial court in permitting leading questions.   State v.
Duestrow, 137 Mo. 84.   (4)   There was an abundance
of evidence tending to show a willful, felonious, de-

liberate, premeditated, malicious attempt by defendant to kill Wilfred Roussan. The fact that the bullet intended for Roussan struck and killed Trokey, whom appellant did not intend to kill, does not exculpate appellant. It was still murder. State v. Mulhall, 199 Mo. 218. (5) The second instruction was merely the trial court's effort to withdraw from the jury's consideration the testimony relative to the altercation between appellant and Courtois. The testimony mentioned was in the record and went in without objection. Anything the court did toward reducing its weight, was of benefit to appellant. If instruction 2 had not been given, this testimony would have remained in the case for all purposes. The instruction limited the purposes for which the jury might consider the testimony. In other words, appellant was placed in a better position by the giving of the instruction than he would have been in without it. He requested no instruction in this connection. He cannot now complain that he got more consideration than he asked. And the evidence was perhaps competent to refute the evidence of accidental discharge. State v. McDonald, 14 R. I. 271. But the main consideration is that without this instruction, which the court voluntarily gave, the testimony would have gone to the jury for all purposes and that the restrictions thrown around it by the instruction were in appellant's favor. (6) The instruction as to the appellant's testimony is in accord with the rule in this State. State v. Maguire, 69 Mo. 202; State v. Zorn, 71 Mo. 416; State v. Dilts, 191 Mo. 673.

FERRISS, J.—Defendant was convicted in the circuit court of Washington county of murder in the first degree, and sentenced to the penitentiary for life.

The homicide was committed on the 4th day of October, 1907, upon one Thomas Trokey. The evi-

dence on the part of the State tended to show that on
the night of October 4, 1907, a dance was held at Cadet,
Washington county, which was attended by some thirty
or forty persons, including defendant and deceased.
There was music, dancing, drinking and quarreling.
The defendant and one Ralls promoted and were in
charge of the dance. Deceased was one of the musi-
cians, and in no way participated in any disorder.
After the ball was over, about 11:30 or 12 o'clock at
night, one Wilfred Roussan was standing outside the
door, defying one Frank Nephew to come outside and
be whipped. Defendant stepped out of the door, took
hold of Roussan and pointed his pistol at him, snapping
it twice, the cartridges missing fire. At this juncture
Roussan turned and ran between defendant and the de-
ceased. Defendant pulled the trigger the third time,
and this time the cartridge exploded, the ball striking
deceased in the temple, killing him instantly. After
the killing defendant fled, and was not apprehended
until in January, 1910, when he was found in the State
of Louisiana. The evidence further showed that about
an hour and a half or two hours prior to the shooting,
defendant had ejected Wilfred Roussan from the hall,
but the evidence fails to show anything further in con-
nection with this incident; that is, whether there was
any quarreling or fighting, or any words exchanged be-
tween the parties on that occasion.

The evidence on the part of the defense tended to
show that the shot which killed the deceased was ac-
cidentally fired during a scuffle between defendant and
others who were engaged in an effort to wrest the
weapon from defendant's grasp. Defendant also in-
troduced evidence tending to show that his reputation
was good. Any further evidence necessary to an un-
derstanding of the case will appear in connection with
the opinion.

The court gave instructions such as are ordinarily

and properly given under the charge of murder in the first degree, and also the following instructions, complained of by defendant:

"2. You are further instructed that if you believe and find from the evidence that defendant and another person, mentioned in the evidence, at any time before the filing of the information in this case, that is to say at any time before the 15th day of February, 1910, in Washington county, and State of Missouri, gave a dancing party, at which Wilford Roussan and Boss Courtois and other persons were present, and if you believe and find from the evidence that Thomas Trokey, being present at said dancing party, was then and there shot and killed by the defendant, and if you further believe and find from the evidence that during the progress of said dancing party, and shortly before said Thomas Trokey was so shot and killed, the defendant had some altercation with the said Boss Courtois in the room in which said dance was given, and that he then and there menaced said Boss Courtois with a pistol, then you are instructed that such altercation and menacing of said Boss Courtois with a pistol by the defendant, is not a matter for your consideration in the trial of this case, and you should not consider it in making up your verdict as to the guilt or innocence of the defendant, except in so far as you may from the evidence believe and find that said incident may throw light upon the reason of the defendant for the firing of the shot which resulted in the death of said Thomas Trokey, if you in fact believe and find from the evidence that said incident, if it took place, throws any light on the reason for the firing of said shot."

"6. You are further instructed that the defendant is a competent witness in this case, and that you must consider his testimony in arriving at your verdict, but you, in determining what weight and credibility you

should give his testimony in making up your verdict, may take into consideration, as affecting his credibility, his interest in the result of the case, together with the fact that he is the accused party on trial, testifying in his own behalf."

Defendant's grounds for a new trial, as set forth in the motion, are as follows:

"1. Because the court erred in admitting illegal and incompetent evidence, offered by the State, and over the objections of the defendant.

"2. Because the court erred in excluding legal and competent testimony offered by the defendant, and over the objections of the defendant.

"3. Because the court erred in giving, of its own motion, instructions numbered 1, 2, 3, 4, 6 and 8, and over the objections of the defendant.

"4. Because the court erred in refusing and failing to declare all the law applicable to this case, and necessary in aiding the jury to arrive at a proper verdict in this case.

"5. Because the court erred in that the court commented upon the evidence in this case in instructions 2 and 6, over the objections of the defendant.

"6. Because the verdict is contrary to the evidence and the law of this case.

"7. Because the court erred in refusing to permit M. E. Rhodes, one of the attorneys for the defendant, to make legitimate and proper argument to the jury on behalf of this defendant in the trial of this cause.

"8. Because the court erred in lecturing the panel of jurors summoned in this cause, at the time said jurors were being examined, as to their qualifications to sit on the trial of this cause, in such manner and to such extent as to prejudice the minds of the jurors against this defendant.

"9. Because the court erred in failing to require the prosecuting attorney to state the case to the jury before the offering and taking of evidence in support of the prosecution in this cause, and by permitting S. G. Nipper, who was not at the time the legally elected, qualified and acting prosecuting attorney, to state the case to the jury, nor had he been appointed by the court to prosecute this defendant in the trial of this cause, over the objections of this defendant.

"10. Because the court erred in that the court misdirected the jury as to material matters of law in the trial of this cause."

Defendant's motion in arrest of judgment, omitting caption, is as follows:

"1. Because the prosecuting attorney had no right or authority in law to file the information in this cause except upon the preferment and finding of a true bill by a legally constituted grand jury, summoned from the body of Washington county, State of Missouri.

"2. Because the facts stated in said information do not constitute a public offense.

"3. Because the facts stated in said information do not constitute the charge for which defendant was convicted, that of murder in the first degree.

"4. Because the verdict of the jury is insufficient to sustain a judgment."

In the brief filed on behalf of the defendant but two points are presented. One, which the brief states is "appellant's chief contention," is to the effect that the court admitted illegal evidence, going to show that the defendant "waved a pistol over the head of Boss Courtois an hour and a half before the killing of Thomas Trokey, over the objections of appellant, and the effort of the trial court to withdraw the same from the jury after having improperly admitted it, in instruction number 2." The only other point urged by

defendant in his brief is that "the State has failed to prove a willful, felonious, deliberate, premeditated, malicious attempt to kill Wilfred Roussan, Boss Courtois or any other person." We will, however, take up the various points urged in the motion for a new trial and the motion in arrest, and dispose of them in order.

First: The first point urged by the defendant, and the one upon which he chiefly relies, is that the court erred in admitting the testimony of the witnesses for the State to the effect that an hour and a half or so prior to the shooting the defendant flourished a pistol in the face of one Boss Courtois in the dance hall.

This evidence was not objected to by the defendant. Several witnesses—three at least—testified that the defendant flourished his pistol in the face of Boss Courtois, and the latter testified to the same thing; all without objection. At the close of the examination of this last witness by the State, the following occurred: Question by the prosecuting attorney: "How did he (defendant) come to draw a gun on you?" Answer: "I couldn't tell you." Judge Dearing (counsel for the defendant): "We object to this as incompetent, irrelevant and immaterial; not charged with an assault on this man at all." The Court: "Hasn't any connection with this other case, has it?" Judge Dearing: "No, sir, it hasn't." Mr. Nipper, attorney for the State: "That's all." It will be perceived that this objection did not go to testimony as to the facts, but simply to the reason. No other objection appears in the record. On the contrary, we may gather from the record that counsel for defendant regarded the Boss Courtois episode as having a favorable bearing on his theory of accidental shooting. He developed the same proof from his own witnesses, presumably on the theory that it tended to show that defendant was displaying a pistol without any criminal intent.

Were we to treat this evidence as having been

properly objected to, we could not say that it was incompetent. This case is unlike the case of State v. Brown, 188 Mo. 451, on which defendant relies. In that case the former act was not related to the act of killing either in point of time or association. In view of the foregoing, the objections to instruction number 2 are not well founded.

Second: Our attention has not been called to any evidence offered by defendant which was excluded by the court, nor do we find any such in the record.

Third: No objection is made in the brief of defendant to the remaining instructions, and they are beyond criticism, with the possible exception of instruction numbered 6. This instruction has been uniformly given in criminal cases, and has met the approval of this court. The writer, speaking for himself, thinks this instruction ought not to have been given. He is of the opinion that the usual instruction given, and which was given in this case, advising the jury that they are the sole judges of the credibility of witnesses and of the weight and value to be given their testimony, etc., is sufficient, and that in such case the particular instruction to the jury as to the testimony of the defendant is unnecessary and improper; but in view of the fact that this instruction has been uniformly given, and has been approved by this court (State v. Dilts, 191 Mo. 665, and cases cited), the court is not now prepared to reverse the case because of this instruction.

Fourth: Points 4 and 5, in the motion for a new trial, are fully covered by what has already been said.

Fifth: The evidence supports the verdict. The defendant argues that the State has failed to prove murder in the first degree, because of the testimony of Roussan "that he and defendant were good friends, were on friendly terms at the time, and had never had

State v. Boyer.

any trouble.'' This contention can have no force in the light of the facts attending the shooting. Roussan was standing outside the door, talking loud and defy-ing one Nephew to come out. Defendant came out through the door with pistol in hand, stepped up to Roussan, said, ''Will you behave?'' and snapped the pistol at Roussan twice. Then Roussan ran. Defend-ant fired at him the third time. This time the cartridge exploded, and the bullet struck Trokey, who was stand-ing in the line of Roussan's flight. When Trokey fell, defendant exclaimed, ''I have killed the wrong man.'' The evidence shows both deliberation and premedita-tion. The case was tried by both sides on the theory that the killing was either murder in the first degree or accident.

Sixth: We do not find in the record any refusal by the court to permit the attorney for defendant to make legitimate and proper argument to the jury.

Seventh: Upon the examination of the jury upon their *voir dire* the court explained at considerable length the law in regard to the right of the jury to determine whether the defendant should receive the death penalty in case of conviction, or be sentenced to the penitentiary for life, and that as the death pen-alty might be regarded as the proper punishment in case of conviction, jurors should qualify upon the ques-tion as to whether or not they had conscientious scru-ples against capital punishment. We do not see anything in this explanation which would tend in any degree to prejudice the jury against the defendant.

Eighth: The objection that the case was stated to the jury by special counsel for the State, and not by the regular prosecuting attorney, cannot be sus-tained. [State v. Taylor, 98 Mo. l. c. 243; State v. Coleman, 199 Mo. l. c. 120.]

The motion in arrest of judgment was properly overruled. The information was sufficient. Defendant does not refer to it in his brief.

The case was thoroughly tried. The instructions presented the issues fairly to the jury. The verdict is amply sustained by the evidence.

There being no reversible error, the judgment is affirmed. *Kennish, P. J.,* and *Brown, J.,* concur.